[Crim. No. 6565. In Bank. Mar. 8, 1960.]

In re EMERY NEWBERN, on Habeas Corpus.

Emery Newbern, in pro. per., and Ernest L. Graves, under appointment by the Supreme Court, for Petitioner.

William B. McKesson, District Attorney (Los Angeles), Jere J. Sullivan and Harry Wood, Deputy District Attorneys, for Respondent.

WHITE, J.—This is a petition in propria persona for a writ of habeas corpus by Emery Newbern against whom judgments of conviction for the offenses of vagrancy and appearing in a public place in an intoxicated condition were rendered in the municipal court. Pursuant to the order to show cause petitioner has been released on his own recognizance pending the outcome of this proceeding. Counsel has been appointed for petitioner after his request therefor.

Petitioner was arraigned on August 14, 1959, in the municipal court on two misdemeanor complaints. One alleged that on or about August 12, 1959, he committed the crime of vagrancy

in that he was a common drunkard (Pen. Code, § 647, subd. 11); the other alleged that on the 13th of August, 1959, he was in a public place in a state of intoxication (Long Beach Mun. Code, § 4150). He entered pleas of not guilty to each charge. Trial was thereupon set for the 18th of August, only four days after the entry of such pleas. Petitioner complained that four days were not sufficient in which to adequately prepare for trial, and requested that counsel be appointed by the court as he was without funds with which to employ counsel of his own choosing. The court appointed the public defender to represent petitioner but refused to postpone the date of trial.

Petitioner alleges that as the 15th and 16th of August were, respectively, a Saturday and Sunday he was not able to consult with counsel until the eve of the trial, the night of August 17th. He states that in the course of that meeting it was decided that a continuance was needed in order to adequately prepare to meet the charges against him. It was urged that certain witnesses and records of court were needed, and that the public defender required time in which to research the legal questions involved in the case. Accordingly, when the cause was called for trial the following morning, the public defender moved for a continuance in the interests of justice, which motion was denied.

At this time, the People moved to amend the complaint charging vagrancy to allege that the crime was committed "on or about August 13, 1959" instead of August 12. Petitioner was arraigned on the amended complaint. On his refusal to waive time in which to enter a plea, a plea of not guilty was entered for him, and the trial proceeded forthwith.

The evidence for the prosecution consisted of dockets and minute orders of petitioner's pleas of guilty to prior charges of intoxication and opinion evidence as to petitioner's intoxicated condition on several previous occasions and at the time of his arrest on the charges contained herein.

Petitioner was convicted on both charges, motions for a new trial and in arrest of judgment were denied, and judgments were entered sentencing him to two concurrent six month terms. ▆▆ Petitioner avers that he is in the process of perfecting appeals from the judgments but that due to his inability to raise what he terms excessive bail the sentences will have practically been served before his case is heard in the appellate department of the superior court. Under these

circumstances habeas corpus is an appropriate remedy. (*In re Sweet*, 113 Cal.App.2d 413, 414 [248 P.2d 94].)

The petition is founded on alleged constitutional infirmities of the judgments of conviction, conditions of detention, and the aforesaid vagrancy statute under which petitioner was convicted.

Petitioner primarily urges that the judgments were secured by procedure violative of his right to due process of law in that the trial was held within such a short time after arraignment that he was thereby effectively deprived of his right to counsel. It is first contended that the refusal of the requested continuance after the prosecution was allowed to amend the complaint charging vagrancy resulted in a denial of due process as no time was afforded counsel for the defense to prepare to meet the amended charge. It is clear that an amendment of substance to a complaint will carry a corresponding obligation to allow the defense adequate time to prepare an "amended defense." (*People* v. *Hembree*, 143 Cal.App.2d 733, 743-744 [299 P.2d 1043].) However, the mere change in the date on which the crime is alleged to have been committed will not encompass a requirement of additional time in which to prepare a defense unless the defendant was actually misled or otherwise prejudiced by such change. (See *People* v. *LaMarr*, 20 Cal.2d 705, 711 [128 P.2d 345]; *People* v. *Moranda*, 87 Cal.App.2d 703, 704 [197 P.2d 394].)

As such prejudice is neither alleged nor apparent from the record herein it does not appear that the change in date of the complaint required the trial court to grant a continuance. But the record reveals that petitioner was otherwise deprived of the effective aid of counsel in the instant proceedings.

Certain principles have been conclusively established in this state concerning the right to counsel. All persons accused of crime in any court in the state have a right to counsel. (Cal. Const., art I, § 13; *People* v. *Mattson*, 51 Cal.2d 777, 788-790 [336 P.2d 937].) That right includes the judicial appointment of counsel in cases in which the accused is financially unable to employ counsel himself. (Pen. Code, § 859.) Most significant to the issues involved herein, the right encompasses more than the mere appointment; it includes the opportunity for counsel to prepare and conduct the case in a reasonably efficacious manner. (*Powell* v. *Alabama*, 287 U.S. 45, 71 [53 S.Ct. 55, 77 L.Ed. 158, 84 L.R.A. 527]; *In re Ochse*, 38 Cal.2d 230, 231 [238 P.2d 561].)

 As heretofore stated, counsel was appointed for peti-

tioner but was not able to consult with him until the night before trial. This failure may not be charged to petitioner. It is the duty of the *court* to secure to a defendant the right to counsel with all its concomitant benefits. (*In re Newbern,* 168 Cal.App.2d 472, 477 [335 P.2d 948].) The Legislature has attempted to prevent the occurrence of the situation that arose herein by providing that a defendant must be given at least five days in which to prepare for trial after his plea has been entered. (Pen. Code, § 1049.) Failure to follow that statutory mandate constituted error by the trial court.

The vice of such error is demonstrated in the instant case. Overnight, counsel was required to assimilate the facts of the case, analyse them, research the applicable law and plan a defense. ■■■■■ Affidavits accompanying the return to the order to show cause indicate that certain witnesses sought by petitioner were produced at the trial but that the documents sought to be subpoenaed by petitioner were held irrelevant, and the subpoenas therefore refused. Such assertions do not obviate the possibility that the short time given to the public defender to prepare resulted in prejudice to the petitioner. The latter claims that the public defender did not have time to do more than present petitioner's request for the allegedly necessary documents, that an adequate legal presentation, including affidavits, could not be prepared. We cannot say that the decision of the trial court that these documents were irrelevant was not the result of such inadequate preparation due to lack of time. It would be grossly unjust to penalize the petitioner for a failure of his counsel to safeguard his rights when such failure was brought about by the conduct of the state. (*People* v. *Sarazzawski,* 27 Cal.2d 7, 17 [161 P.2d 934] ; *People* v. *Boyden,* 116 Cal.App.2d 278, 285 [253 P.2d 773].)

Furthermore, substantial questions of the constitutionality of the subsection of the vagrancy statute under which petitioner was convicted were raised and, as will be seen hereinafter, are meritorious. Adequate time to research such questions as well as time to chart the course of the defense may not have been accomplished literally overnight.

■■■■ The foregoing amply demonstrates that in a case such as the one now engaging our attention, forcing petitioner to trial in less than the minimum time provided by statute to prepare a defense, despite requests for a continuance, resulted in a denial of due process of law. Such defect can be reached

by the writ of habeas corpus. (*In re McCoy*, 32 Cal.2d 73, 76 [194 P.2d 531].)

The scope of that writ must now be determined. ■ In the usual case of habeas corpus granted because of illegality in the procedure leading to conviction the petitioner is, nevertheless, not immune from prosecution and will therefore be remanded to the custody of the proper local officials for new and legally proper proceedings. (*In re James*, 38 Cal.2d 302, 313-314 [240 P.2d 596].) He is not entitled to his freedom. However, in the case at bar the petitioner challenges the constitutionality of one of the statutes under which he has been convicted. We therefore deem it proper at this time to deal with that issue for the guidance of the trial court in subsequent proceedings. Petitioner urges that Penal Code, section 647, subdivision 11, categorizing anyone who is a "common drunk" as a vagrant and imposing punishment therefor, is unconstitutionally vague and violates the requirement that all laws of a general nature shall have a uniform operation. (Cal. Const., art. I, § 11.)

■ The requirement of a reasonable degree of certainty in legislation, especially in the criminal law, is a well established element of the guarantee of due process of law. "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids . . . 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' " (*Lanzetta* v. *New Jersey*, 306 U.S. 451, 453 [59 S.Ct. 618, 83 L.Ed. 888] ; see also *Connally* v. *General Const. Co.*, 269 U.S. 385, 391 [46 S.Ct. 126, 70 L.Ed. 322].) Such also is the law of the State of California. (*People* v. *McCaughan*, 49 Cal.2d 409, 414 [317 P.2d 974].)

■ The required meaning, certainty and lack of ambiguity may appear on the face of the questioned statute or from any demonstrably established technical or common law meaning of the language in question. (*People* v. *McCaughan*, *supra*, 49 Cal.2d 409, 414; *Lorenson* v. *Superior Court*, 35 Cal.2d 49, 60 [216 P.2d 859].) Is the term common drunk ambiguous on its face? We are constrained to answer this question in the affirmative.

■ There can be no doubt that the term common drunk is in general use in the community, and the adjective common

is undoubtedly one of the most widely used words of the English language. Here, unfortunately, lies the difficulty, for we think it evident that such generality of usage has resulted in a variety of differing definitions rather than any single precise meaning to the term. Webster's New International Dictionary (2d ed., unabridged) assigns 14 definitions to common ranging from "belonging . . . to the community at large" through "of frequent or ordinary occurrence or appearance" to "characteristic of the lower classes." Webster's New World Dictionary defines common in approximately as many variants, including "public," "general," "familiar," "usual," and "ordinary." Black's Law Dictionary also has a number of definitions listed, including those above set forth. None of these dictionaries has a listing for the term common drunk although Black's includes in its definition of the term drunkard the statement that common drunk is taken as the equivalent of "habitual" or "public" drunk. It is noteworthy that the authority just cited is based on only two out of the vast number of cases to be hereinafter discussed dealing with the meaning of the terms in question. It may be added that these definitions adopted by Black's Law Dictionary are not mutually inclusive, but deal with two very different attributes. In general, the term common drunk may variously be, and is, used to denote one who is drunk many times, one who is addicted to alcohol, one who is drunk in a very unsavory manner, and one who has the reputation of being drunk, among others.

The decisions of other jurisdictions are of little aid in solving the problem now confronting us. Almost as many definitions of a common drunk are judicially accepted as there are courts to formulate them. Thus, a common drunk has been held to be one who is drunk in public (*Commonwealth* v. *Whitney*, 71 Mass. (5 Gray) 85, 88); one whose "general rule of life is that of drunkenness, continuous drinking, sobriety being the exception" (*Tatum* v. *State*, 32 Ala.App. 128 [22 So.2d 350, 351]), and a habitual drunk. (*Pollon* v. *State*, 218 Wis. 466 [261 N.W. 224, 226].)

Only once has the constitutionality and construction of the "common drunk" subdivision of the vagrancy section of our Penal Code come before the appellate courts of this state. In an opinion by the appellate department of the Superior Court of Stanislaus County it was defined as "habitual or frequent" and held free of objectionable vagueness. (*People* v. *Daniel*, 168 Cal.App.2d Supp. 788, 801 [337 P.2d 247].)

In view of the plethora of conflicting definitions of the term common drunk in common use we can see no compelling reason to accept the definition advanced by the Daniel case. Even assuming that case to be correct, however, we are not out of the definitional woods, for we are faced with the task of defining the substitute terms habitual and frequent. Once more the dictionaries are not of too much help for they only indicate a multitude of possible definitions for each of these terms. ▮ Habitual may be "done by habit," "steady," "usual," or "frequent." (Webster's New World Dictionary.) A thing done by habit may be one done "often" or "usually." It may be a "practice," "custom," an "automatic act" or an "addiction." (*Ibid.*) ▮ Similarly, frequent may be defined as "usually," "familiarly," "addicted to" or "habitually." In which sense are we to take either term? Is a common drunk one who is drunk often, and if so, how often and within what period of time?[1] Or is it one who is usually drunk, or one who is inordinately addicted to the use of alcohol?

The other jurisdictions again provide little help. The term habitual drunkard is used to delineate many different afflictions, including the following: "To constitute an habitual drunkard, it is not necessary that a man should be always drunk. . . . The only rule is, has he a fixed habit of drunkenness? Was he habituated to an intemperance *whenever the opportunity offered?*" (*Ludwick* v. *Commonwealth,* 18 Pa. 172, 174-175, emphasis added. See also *Magahay* v. *Magahay,* 35 Mich. 210.) It has also been held to mean one who habitually becomes intoxicated by the *voluntary* use of intoxicating liquors (*Wilson* v. *White,* 29 Tex.Civ.App. 588 [69 S.W. 989]); one who " 'has a *fixed habit* of frequently getting drunk, though not oftener drunk than sober, and though sober for weeks at a time' " (*Patton* v. *Commonwealth,* 273 Ky. 307 [116 S.W.2d 652], emphasis added); one who has "lost the power or will to control [his] appetite for intoxicating liquors . . . [those] who are in need of care and treatment, and . . . those it would be dangerous to leave at large" (*Leavitt* v. *City of Morris,* 105 Minn. 170 [117 N.W. 393, 395 [17 L.R.A.N.S. 984, 15 Ann.Cas. 961]; *Ash* v. *Ash,* 327 Ill.App. 656 [64 N.E.2d 741, 743]); one who has "gross and confirmed habits of intoxication" (*Gourlay* v. *Gourlay,* 16 R.I.

---

[1] In Oregon, being drunk an average of twice a month does not make a man a habitual drunk. (*McBee* v. *McBee,* 22 Ore. 229 [29 P. 887, 29 Am.St.Rep. 613].)

705 [19 A. 142, 143]); one who has acquired the habit "of using spiritous, malt or fermented liquors . . . to such an extent . . . as to deprive him of reasonable self control" (*Interdiction of Gasquet*, 136 La. 957 [68 So. 89, 92]); one who has lost the ability, through drink, to manage his own affairs (*Rude v. Nass*, 79 Wis. 321 [48 N.W. 555, 558, 24 Am.St.Rep. 717]), and as one who is drunk more often, literally, than not (*Tatum v. State, supra*, 32 Ala.App. 128 [22 So.2d 350, 351]). It may easily be seen from the foregoing collection of cases that reasonable men differ greatly as to the meanings to be ascribed to the term common or habitual drunks or drunkards. It is also apparent that some of the definitions quoted above are not, themselves, free from a charge of ambiguity.

Though lacking a sufficiently certain meaning in ordinary use, does the term common drunk have an established technical or common law meaning? The term is not a medical one and we do not, therefore, think that a case can be made for the establishment of a technical meaning. We likewise turn in vain to the common law for aid. Common drunk was not an offense known to the common law. (*Commonwealth v. O'Connor*, 89 Mass. (7 Allen), 583, 585; *State v. Munger*, 43 Wyo. 404 [4 P.2d 1094, 1095]; *Prince v. State*, 36 Ala.App. 529 [59 So.2d 878, 879]; *Pollon v. State, supra*, 218 Wis. 466 [261 N.W. 224, 226].) Blackstone may be searched without success for any mention of common or habitual drunkenness.[2] Only in a fairly recent English statute has the term habitual drunkard been found, and it was therein defined as one who could not manage his affairs. (Habitual Drunkards Act of 1879, 42 & 43 Vict., ch. 19, § 3.)

We are not the first court that has hesitated at attempting to select one of the many definitions for the terms herein at issue. In *State v. Ryan*, 70 Wis. 676 [36 N.W. 823], the court struck down as a denial of due process of law an act that provided for the commitment of any habitual drunkard for two years. As one ground for its action the court held the statute too vague, saying, at page 827 [36 N.W.], "conviction is . . . made dependent solely upon . . . 'being an inebriate, habitual or common drunkard.' Just what would

---

[2] Present in Blackstone are the crimes of drunkenness (4 Blackstone Commentaries, § 64—dealing with a single, public act), common barratry (4 Blackstone Commentaries, § 142—in which *common* means only by one not a lawyer), common nuisance (4 Blackstone Commentaries, § 167 —in which common merely means public) and common scold (4 Blackstone Commentaries, § 169—which was only a type of public nuisance). From none of the foregoing may any assistance be derived.

make a person such is not very clearly defined. Manifestly, it was intended that the drunkenness should be repeated to the extent of becoming habitual, but *just how frequent* [*sic*] *it should occur,* or the extent of the delirium or stupefaction, *is left as a matter of fact to be determined by those who might differ widely in regard to it.*'' (Emphasis added. See also *Northwestern Mut. L. Ins. Co.* v. *Muskegon Nat. Bank,* 122 U.S. 501, 505-506 [7 S.Ct. 1221, 30 L.Ed. 1100].)

The language just quoted from the Ryan case (*supra,* 70 Wis. 676 [36 N.W. 823]) points up the dual nature of the problem arising from vague statutory language. The first aspect of the difficulty is that citizens are not sufficiently warned by vague language as to what course of conduct is denounced. Secondly, the court is given insufficient standards by which to judge the defendant's conduct. Consequently, each judge and jury is free to define the crime in any manner that it sees fit, giving rise to the dangers of imposing *ex post facto* punishment on the defendant, having the jury find the law as well as the facts and giving the statute the effect of a bill of attainder in each particular case.

The real nature of these problems may be evidenced by the instructions given to the jury in the case at bar. At the request of the prosecution, the jury was charged as follows: ''You are instructed that Ballantine's Law Dictionary, Second Edition (1948) defines 'common drunkard' as a person who drinks intoxicating liquor to excess with habitual frequency. . . . You are instructed that insofar as the common drunkard charge is involved, you need only decide whether or not at the time of the Defendant's arrest he was an habitual or frequent user of intoxicating liquor to excess.'' Thus, it was left to the jury to determine according to their individual views and concepts when in their respective opinions a person ''drinks intoxicating liquor to excess with habitual frequency'' or when is a person ''an habitual or frequent user of intoxicating liquor to excess.'' The legal impediment in the statute here under consideration is that it fails to include a standard of what inordinate use of intoxicants makes a person a common drunkard. By its terms the statute leaves to the individual judge or jury the determination of the meaning of the law as well as what proven facts render the accused guilty or innocent. It is not difficult to visualize the divergence of decisions or verdicts that must ensue when the law leaves its definition and meaning to be determined by judges and juries who might differ widely in regard to it.

Finally, we might point out that the Constitution of the State of California commands that all general laws be of uniform operation. (Const., art. I, § 11.) That provision will not tolerate a criminal law so lacking in definition that each defendant is left to the vagaries of individual judges and juries. Yet, as we have pointed out above, such is the inevitable result of attempting to enforce a law punishing a "common drunk," whereunder a person drunk, for example, once a week for four months could be found guilty of a violation of subdivision 11 of Penal Code, section 647, in one jurisdiction but not in another.

In dealing with a somewhat similar problem, that of fixing the length of sentence for a habitual criminal, the Legislature has delineated the specific number and kinds of prior convictions that will operate to classify an accused as a habitual criminal. (Pen. Code, § 644.) At least one state has found this to be the proper method of dealing with the problem of common drunkenness—the Rhode Island Legislature has provided for the conviction as a common drunk of everyone convicted of drunkenness three times within six months, or proven to have been drunk three times within six weeks. (Gen. Laws of R. I., tit. 11 § 11-45-11 [1956].)

For the foregoing reasons we conclude that the challenged subdivision of Penal Code, section 647, is unconstitutionally vague, uncertain and incapable of being uniformly enforced. The contrary holding in *People* v. *Daniel, supra,* 168 Cal.App.2d Supp. 788, is disapproved. Petitioner may not, therefore, be subjected to trial for the violation of subdivision 11 of Penal Code, section 647, and is entitled to his discharge from custody or further imprisonment by reason of his conviction thereunder.

However, petitioner was also tried and convicted under a second complaint wherein he was charged with a violation of an ordinance of the City of Long Beach which makes it a misdemeanor for any person to appear in a public place while intoxicated. (Long Beach Mun. Code, § 4150.) In that case the denial of petitioner's right to a continuance in order that court appointed counsel might properly and effectively present petitioner's defense did not serve to acquit him of the last mentioned offense charged, and he is still subject to trial. (*In re James, supra,* 38 Cal.2d 302, 313-314.)

In view of the foregoing conclusions at which we have arrived, it becomes unnecessary to discuss petitioner's allegations of "unconstitutional" conditions of detention.

The writ is granted, the convictions are set aside, and as to the case wherein petitioner was charged with a violation of Penal Code, section 647, subdivision 11, he is ordered discharged from custody. In the case wherein petitioner is charged with a violation of Municipal Code, section 4150, of the City of Long Beach, it is ordered that he be discharged from the custody of the Sheriff of Los Angeles County and committed to the custody of the Chief of Police of the City of Long Beach for further proceedings in accordance with the views herein expressed.

Gibson, C. J., Traynor, J., Schauer, J., Spence, J., McComb, J., and Peters, J., concurred.