[Civ. No. 42198. Second Dist., Div. Two. May 8, 1974.]

In re SHERMAN M., a Person Coming Under the Juvenile Court Law.
COUNTY OF LOS ANGELES, Petitioner and Respondent, v.
HELEN JOYCE BEITEL, Objector and Appellant.

## COUNSEL

Philip L. Goar, Gerald Blank and W. Kenneth Rice for Objector and Appellant.

John H. Larson, County Counsel, and Paul T. Hanson, Deputy County Counsel, for Petitioner and Respondent.

## OPINION

**BEACH, J.**—This is an appeal by the natural mother of the subject four-year-old minor from an order and judgment of the superior court granting the respondent's petition that the minor be freed from custody and control of appellant in order that the minor might be adopted. The foster family with which he now lives, and has lived since two months of age, seeks to adopt him. The judgment of the superior court was made pursuant to California Civil Code section 232, subdivision (c).

### FACTS

The child Sherman M. lived with his mother (appellant) for about one month after his birth. Other than that he has not lived with appellant.

At the age of one month he began living with a series of friends and relatives of the natural father, finally being placed in his present home.

This placement was made because of appellant's heavy addiction to alcohol and consequent inability to care for the child. At about age nine months Sherman was made a dependent of the juvenile court under Welfare and Institutions Code section 600, subdivision (a), because he had no parent exercising proper and effective care of him. This was due to the mother's excessive use of alcohol. It was ordered that the child be suitably placed in his then foster home. His dependency was continued up to the time of trial because the appellant was unable to provide a home for him due to her continued heavy use of alcohol, and the resulting inability to care for the child. At the trial of this matter, petitioner presented evidence that the appellant had been indulging in the continued, frequent and heavy use of alcohol up to the trial and that appellant had not been cured of her alcoholism.

Sherman has had no significant contact with his mother since she ceased taking care of him at about the age of one month. She has not supported him. She visited him only once in his foster home when he was a little over two years old, and once in a restaurant about three months later. Both visits were arranged by social workers. The petition in this matter was filed after the last visit. Frequently appellant's whereabouts were unknown to the social workers.

Sherman has four siblings (with whom he has had no contact) who were last removed from the custody of appellant about five years before the present case. These children of appellant are also dependents of the juvenile court and reside in foster homes and a special school. Three were made dependents of the juvenile court about eight years earlier because of parental neglect. All these dependencies were originally necessary and were continued to the time of trial in each case because of appellant's heavy addiction to alcohol and the consequent inability to care for her children.

## The Statute Involved

Civil Code section 232, subdivision (c), provides that a minor child may be declared free of the custody and control of a parent when such child's ". . . parent or parents are habitually intemperate, or morally depraved, if such [child] has been a dependent child of the juvenile court, and the parent or parents deprived of his custody because of such intemperance, or moral depravity, for the period of one year . . . ."

## Appellant's Contentions

Appellant contends that the terms "habitually intemperate" and "morally depraved" are both vague and that therefore their use in the stat-

ute, Civil Code section 232, subdivision (c), renders that section unconstitutionally vague and therefore void. Appellant also contends that the statute cannot be made constitutionally definite by judicial construction.

## · DISCUSSION

We confine ourselves to considering the contention relative to the term "habitually intemperate" only. Although appellant's counsel attacks both terms, the record clearly discloses that of these two terms the only one involved in the issues raised by the pleadings and tried by the court is that of "habitual intemperate."

The term "habitually intemperate" is not so vague as to deprive appellant of due process of law. Appellant relies on *In re Newbern,* 53 Cal.2d 786 [3 Cal.Rptr. 364, 350 P.2d 116], where the court held the term "common drunk" used in a vagrancy statute (Pen. Code, § 647, subd. 11) to be vague. Appellant asserts that the term "habitually intemperate" means just the same thing as, and is but a "fancy word" for, common drunk and therefore the term is void for vagueness. We do not agree. In *Newbern,* the court explained that the word "common" has such a variety of meanings that its use in a criminal statute made that portion of the statute uncertain. The court said at page 792: " 'a statute which either forbids or requires the doing of an act in terms so vague that men of common[1] intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' [Citations.]" Here, unlike *Newbern,* there has not been such generality of usage which has resulted in a variety of different meanings or different definitions of the words "habitually intemperate." (Cf. *Newbern,* at p. 793.)

Appellant also relies on *People* v. *Perreault,* 182 Cal.App.2d Supp. 843 [5 Cal.Rptr. 849]. In *Perreault,* the statute held void declared that it was a crime to be "habitually drunk" in the presence of certain children. The precise reason for such holding is not given, the court stating merely that it was bound by *Newbern.* However, in *Newbern* the court did not hold the term "habitually intemperate" to be the same as "common drunk," nor did the court state that the term "habitually drunk" was void for vagueness. *Newbern's* holding was predicated principally upon the fact that the word "common" was too broad and susceptible of a variety of interpretations

---

[1]In using this quotation from *Connally* v. *General Const. Co.,* 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126], the court uses a standard referring to "men of *common* intelligence" to hold that a statute using the term *"common* drunk" is vague. The refined difference is not explained in the opinion.

and meanings. We do not believe that the words "habit" or "habitually" are afflicted with the same infirmity. The terms "habit" and "habitual" have been defined in the cases, encyclopedias and law dictionaries. The definitions are understandable, definite and very much the same. They are simple words with simple meanings. (See *McMurtry* v. *State Board of Medical Examiners,* 180 Cal.App.2d 760, 766-768 [4 Cal.Rptr. 910].) See, e.g., 39 Corpus Juris Secundum pages 756-757: *"Habit:* A word with a clear and well understood meaning; . . . *Intemperate habit or Intemperate habits.* Plain nontechnical words, meaning any habit pursued to excess; and with particular reference to intoxicants it is the use thereof, commonly, to excess; any immoderate or excessive use of intoxicating liquors." (See 1973 Cum. Ann. Pocket Part, 39 C.J.S. p. 340, note 24, citing *McMurtry* v. *State Board of Medical Examiners, supra,* 180 Cal. App.2d 760. See *Mahone* v. *Mahone,* 19 Cal. 626; *Haskell* v. *Haskell,* 54 Cal. 262; *Hayes* v. *Hayes,* 181 Cal.App.2d 634 [5 Cal.Rptr. 509], illustrating clearly understandable use of the term "habitual intemperance.")

The case before us concerns the meaning of the two specific words, "habitually intemperate." No California case called to our attention has interpreted this term as vague and therefore constitutionally void. *Newbern* considered two other specific words, "common drunk." But there are critical differences between *Newbern* and the case before us: (a) the type of statute: there a criminal statute; here a civil statute; (b) the relationship of the parties: there the state against a criminal defendant ; here a parent, a child, and the state, seeking to promote the child's best interests; and (c) different words; there "common drunk"; here "habitual intemperance." In *Mahone* v. *Mahone, supra,* 19 Cal. 626, the California Supreme Court in 1862 found no difficulty in defining "habitual intemperance" as grounds for divorce as follows: "If there is a fixed habit of drinking to excess to such a degree as to disqualify a person from attending to his business during the principal portion of the time usually devoted to business, it is habitual intemperance—although the person may at intervals be in a condition to attend to his business affairs." (P. 628.) This definition retains validity for purposes of civil obligation, including the case before us.

At bench, we have a statute describing a condition of parents in a particular situation. ▉ The purpose of the statute is to protect children, not to punish a criminal offender. The interest sought to be protected is that of the welfare of a child. Its need to be raised with love, emotional security and physical safety is paramount to any right of a neglectful parent to have the custody and physical proximity of its child. We do not deny appellant's assertion that the right of a parent to one's child is dearer than life itself. However, a child is not a chattel. In the present case, the

issue is best presented not by the question "Who has the right to custody of the child?" but by the question "What will promote and protect the best interests of the child?" The statute requires that the law be interpreted to promote that end. "The provisions of this chapter shall be liberally construed to serve and protect the interests and welfare of the child." (Civ. Code, § 232.5.)

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 3, 1974.