[Crim. No. 13446. First Dist., Div. Four. July 8, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
HARRY KIRK, Defendant and Appellant.

COUNSEL

John David Rothschild, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Ann K. Jensen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CALDECOTT, P. J.**—This is an appeal from a judgment, following a jury trial, committing appellant to Atascadero State Hospital as a mentally disordered sex offender.

I

Appellant contends that the preponderance of evidence standard of proof in mentally disordered sex offender proceedings and the lack of a requirement for a unanimous verdict is an unconstitutional denial of appellant's Sixth and Fourteenth Amendment rights under the United States Constitution, and article I, section 7 of the California Constitution.

The identical questions raised by appellant on this appeal were recently adjudicated (May 15, 1975) in a series of Supreme Court cases, *People* v. *Burnick,* 14 Cal.3d 306 [121 Cal.Rptr. 488, 535 P.2d 352], *People* v. *Feagley,* 14 Cal.3d 338 [121 Cal.Rptr. 509, 535 P.2d 373], and *People* v. *Bonneville,* 14 Cal.3d 384 [121 Cal.Rptr. 540, 535 P.2d 404]. In *Burnick,* at page 310, the court held: "As we shall explain, we reject the asserted right of the state to publicly brand a man as a mentally disordered sex offender and lock him up for an indeterminate period in a maximum security mental hospital on a mere preponderance of the evidence, i.e., 'under the same standard of proof applicable to run-of-the-mill automobile negligence actions.' (Fn. omitted.) (*Murel* v. *Baltimore City Criminal Court* (1972) 407 U.S. 355, 359 [32 L.Ed.2d 791, 794, 92 S.Ct. 2091] (Douglas, J., dissenting from dismissal of certiorari).) We hold, rather, that in order to comply with the requirements of the due process clauses of the California and federal Constitutions, so drastic an impairment of the liberty and reputation of an individual must be

justified by proof beyond a reasonable doubt." The court in *Burnick,* at page 332, also explicitly stated that its decision was to be accorded full retroactive effect: "And because the major purpose of this rule is to overcome an aspect of those proceedings which 'substantially impairs the truth finding function,' our decision today must be given complete retroactive effect. (*Ivan V.* v. *City of New York* (1972) 407 U.S. 203, 205 [32 L.Ed.2d 659, 661, 92 S.Ct. 1951] (holding *Winship* fully retroactive).)"

In *People* v. *Feagley, supra,* at page 342, the court stated: "Preliminarily we hold that as in *People* v. *Burnick, ante,* page 306 [121 Cal.Rptr. 488, 535 P.2d 352], an alleged mentally disordered sex offender is entitled to the safeguard of proof beyond a reasonable doubt, and that the statutory denial of a unanimous verdict on the question whether he is such an offender violates the due process and jury trial provisions of the California Constitution and the equal protection clauses of both the state and federal Constitutions."

For the foregoing reasons, the jury's finding that appellant was a mentally disordered sex offender as defined in Welfare and Institutions Code section 6300 must be reversed. An unconstitutional standard of proof was used to make such a finding,[1] and a unanimous jury verdict was not required as it now must be in light of the *Feagley* and *Burnick* decisions.

## II

Appellant's final challenge concerns the term "dangerous" as it is used in Welfare and Institutions Code section 6300. That section provides: "As used in this article, 'mentally disordered sex offender' means any person who by reason of mental defect, disease, or disorder, is predisposed to the commission of sexual offenses to such a degree that he is *dangerous* to the health and safety of others. Wherever the term 'sexual psychopath' is used in any code, such term shall be construed to refer to and mean a 'mentally disordered sex offender.' " (Italics added.) Appellant argues (1) that the term "dangerous" (to the health and safety of others) is hopelessly ambiguous and vague and that the statute is therefore unconstitutional and (2) that as applied to the facts of the instant case, is so far beyond any previous judicial definition of "dangerous" as to be unconstitutional.

---

[1] The jury was instructed that "the Plaintiff [State] has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove . . . [whether] the Respondent [defendant] is a mentally disordered sex offender."

The requirement of a reasonable degree of certainty in legislation, especially in criminal law,[2] is a well-established element of the guarantee of due process of law (*In re Newbern,* 53 Cal.2d 786, 792 [3 Cal.Rptr. 364, 350 P.2d 116]). ▮ " 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids . . . "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." ' (*Lanzetta* v. *New Jersey,* 306 U.S. 451, 453 [83 L.Ed. 888, 890, 59 S.Ct. 618].) . . . Such also is the law of the State of California. (*People* v. *McCaughan,* 49 Cal.2d 409, 414 [317 P.2d 974].)"

The required meaning, certainty and lack of ambiguity may appear on the face of the questioned statute or from any demonstrably established technical or common law meaning of the language in question (*People* v. *McCaughan, supra,* 49 Cal.2d at p. 414).

▮ As will be shown below, the word "dangerous" in section 6300 is not so vague or ambiguous *on its face* as to violate due process.[3]

Webster's Third New International Dictionary defines "dangerous" as "able or likely to inflict injury: causing or threatening harm." Such a meaning is one commonly understood by people of reasonable intelligence. Appellant's argument to the contrary is actually predicated on his contention that *as applied* to the instant case, the term has been stretched

---

[2] In light of the stigma and possible loss of freedom involved in actions brought under Welfare and Institutions Code section 6300, and in light of the *Burnick* and *Feagley* decisions (applying criminal standards of proof to such actions), we must treat section 6300 as criminal in nature.

[3] In *People* v. *Burnick, supra,* the Supreme Court expressed doubts as to the constitutionality of section 6300 itself.

"While the question of the vagueness *vel non* of section 6300 lurks in any consideration of the proper standard of proof in mentally disordered sex offender proceedings, defendant on this appeal does not raise—and we therefore do not reach—the contention that the section violates the due process clause of the California Constitution under the rules of such cases as *In re Newbern* (1960) 53 Cal.2d 786, 792-797 [3 Cal.Rptr. 364, 350 P.2d 116], and *Perez* v. *Sharp* (1948) 32 Cal.2d 711, 728-731 [198 P.2d 17], or the due process clause of the federal Constitution as applied in such decisions as *Papachristou* v. *City of Jacksonville* (1972) 405 U.S. 156 [31 L.Ed.2d 110, 92 S.Ct. 839], and *Giaccio* v. *Pennsylvania* (1966) 382 U.S. 399 [15 L.Ed.2d 447, 86 S.Ct. 518] (see also *United States* v. *Duardi* (W.D.Mo. 1974) 384 F.Supp. 874, 886 [16 Crim.L.Rep. 2185, 2187] ('dangerous offender' statute held void for vagueness))." (Fn. 20 at p. 329.)

However, a review of *Burnick* indicates that the court there was also concerned about the reliability of psychiatric evaluations of an accused's predisposition to commit such acts in the future.

too far. In short, appellant argues that there is no substantial evidence to support the jury's finding that he was predisposed to the commission of sexual offenses to such a degree that he posed a danger to the health and safety of others.

Since we must reverse the jury's decision for the reasons previously discussed, we need not reach appellant's contentions in this regard. We will, however, make some observations which may be helpful on retrial.

In support of his contention, appellant refers to the conclusion of one witness, psychiatrist David Kessler, who basically testified that given the factual circumstances of appellant's offense (that he had been solicited by the juveniles involved; that his solicitors had previously engaged in sexual acts with other men for money; and appellant's own history of nonviolence) that appellant was not dangerous to the health and safety of others.

However, the circumstances surrounding the immediate underlying offense are not dispositive of the question of whether appellant is a mentally disordered sex offender. While appellant may be nonviolent, there is no real doubt in the record that his sexual predilection for young males will continue. Even Dr. Kessler opined that "[t]here did not seem to be any question in my mind as to the pre-disposition of sexual offenses. That seemed to be very clear from the record." Hence, while the two boys who solicited appellant *this* time were the aggressors, appellant himself may be the solicitor the next time. That is the harm that Welfare and Institutions Code section 6300 seeks to prevent. (*People v. Schaletzke,* 239 Cal.App.2d 881 [49 Cal.Rptr. 275].)

Additionally, appellant neglects to discuss the testimony of two other psychiatrists—Doctors Levy and Carfagni. Both testified that appellant's behavior was likely to be dangerous to children because the juveniles with whom he might have contacts in the future (i.e., adolescents and pre-adolescents) would be in a period of growth and immaturity. Appellant admitted past contacts such as the ones which form the basis of this action and there was direct testimony that behavior such as appellant's with young children is likely to be "dangerous" to them. A 13-year-old has not yet solidified a life style nor has he yet developed the experiences and judgment which would permit him "to firm up a self-image, a manner of addressing others, a way of relating to people." For this reason, acts such as appellant's can have a deleterious emotional impact on youngsters, even if they are willing participants.

It must be remembered that the acts of which appellant stands accused (oral copulation with boys 13 years of age) and his past convictions for child molesting, are not of an arguably trivial nature such as the acts in *Feagley, supra* (stroking the hair of young girls without ever using force).

Appellant's next contention, that the case of *People* v. *Stoddard,* 227 Cal.App.2d 40 [38 Cal.Rptr. 407], defines the limits of "dangerousness" within the contemplation of section 6300 is without merit. Nor can we agree with his conclusion that psychological harm to the instant victims is nonexistent because of their previous exposure to such activities and that therefore there was no "danger to others."

In *People* v. *Stoddard, supra,* the defendant was predisposed to exposure of his sex organ to young and sexually innocent girls. The psychological testimony was to the effect that future exposures could cause serious psychological harm to young girls and was therefore a sufficient basis on which to commit defendant as a sexual psychopath.[4] The court ruled that "[w]e have no hesitancy in holding that the threat of psychological trauma [which was considered by psychiatrists to be a probability where young girls were subjected to such a defendant] is quite as much a 'menace to the health or safety of others' as is probable physical injury."[5] (*Id.,* at p. 42.)

We disagree with appellant that *Stoddard* somehow sets the outer limits of what may be considered dangerous. The concept of what is dangerous must be determined on a case-by-case basis. Applying the standards of *People* v. *Burnick* and *People* v. *Feagley,* juries will now have to be convinced, unanimously and beyond a reasonable doubt, that one such as appellant does pose a danger to the health and safety of others. This safeguard sufficiently protects one accused of being a mentally disordered sex offender.

In the instant case, we must reverse for the reasons discussed; however, we note that the concept of appellant's dangerousness was thoroughly discussed by the various psychiatrists who testified at the trial. Each gave his opinion regarding whether or not he felt appellant's

---

[4]In *Stoddard,* the language under construction was whether defendant's acts constituted "a menace to the health and safety of others" under Welfare and Institutions Code section 5500. This section has since been repealed by Statutes 1965, chapter 391, section 3, page 1630. Section 6300 was added by Statutes 1967, chapter 1667, section 37, page 4107. It does not specifically define "dangerous" to the health and safety of others.

[5]The defendant in *Stoddard* was found *not* to pose a threat of physical contact with the youngsters to whom he exposed himself. (*Id.,* at p. 41.)

sexual predispositions would be harmful to the welfare of young males including those who actually solicited appellant. One of these psychiatrists concluded that appellant was not so dangerous as to come within the definition provided by Welfare and Institutions Code section 6300;[6] the other two disagreed. The jury were then given the task of weighing this expert testimony and making their ultimate decision. They were instructed pursuant to BAJI No. 2.41.[7] They were told that the phrase "dangerous to the health and safety of others" refers to a danger to either the physical or psychological welfare of others. Had the state's burden of proof been properly articulated and the requirement of unanimity been employed, we would have concluded that there was substantial evidence in support of their verdict.

The judgment is reversed.

Rattigan, J., and Emerson, J.,* concurred.

---

[6]It may be noted that Dr. Kessler's major concern was his own dissatisfaction with the wording of the statute.

[7]"In resolving any conflict that may exist in the testimony of expert witnesses, you should weigh the opinion of one expert against that of another. In doing this, you should consider the relative qualifications and credibility of the expert witnesses, as well as the reasons for each opinion and the facts and other matters upon which it was based."

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.