Filed 12/31/20  P. v. Hashemi CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SEYED HASHEMI,<br><br>    Defendant and Appellant. | B301470 (Consolidated with B302906)<br><br>(Los Angeles County Super. Ct. No. PA081437) |

APPEAL from a judgment, and a petition for writ of habeas corpus, of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  The judgment is affirmed; petition denied.

Seyed Hashemi, in pro. per.; Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Michael R. Johnsen and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Seyed Hashemi (defendant) was convicted of a series of crimes against his ex-wife that culminated in him kidnapping and carjacking her at gunpoint, all the while threatening to kill her. On appeal, he challenges (1) the trial court's ruling limiting one aspect of his cross-examination of his ex-wife, and (2) the sufficiency of the evidence underlying his conviction for kidnapping for carjacking (Pen. Code, § 209.5, subd. (a)).[1] Defendant also filed a petition for a writ of habeas corpus. None of defendant's arguments has merit, so we affirm the judgment and deny the petition.

## FACTS AND PROCEDURAL BACKGROUND

I.     **Facts**

A.     ***Marriage and divorce***

Defendant and Mahsan S. (Mahsan) met in 2010 and started dating. After defendant's second arrest for driving under the influence over the summer of 2011, defendant and his family started "calling [her] all the time" and "pressur[ing]" Mahsan to marry defendant to "help him get out of jail" and to "prevent him from being deported." In September 2011, she succumbed to the pressure and married him at the jail despite feeling that "he [was] not right for [her]." Although they continued to be intimate after the marriage ceremony, they did not live together and she did not tell her family.

---

1     All further statutory references are to the Penal Code unless otherwise indicated.

2

Mahsan filed for divorce in March 2012, and the divorce was finalized in September 2012.

### B.  *Defendant's campaign of unwelcomed contact and threats*

Between September 2013 and March 2014, defendant would park outside of a gated apartment complex where Mahsan lived.  From time to time, he would also follow her when she left and, at times, would confront her.  When he confronted her, defendant promised that he would never leave her alone, threatened to ruin her life, and threatened to kill her.

### C.  *The March 2014 incident*

On March 22, 2014, defendant approached Mahsan—in violation of a newly issued restraining order—as she was jogging at Warner Center Park, physically assaulted her by pulling on her hair and then biting her nose, demanded that she have the restraining order lifted, and then threatened to kill her.

### D.  *The July 2014 incident*

On July 30, 2014, while defendant was out on bail and subject to pending charges arising from the March 2014 incident, defendant approached Mahsan in the parking lot outside the L.A. Fitness she used.  Wearing a bulky sweatshirt with the hood down to conceal his identity, defendant walked up to her when she was just "a few feet" from her car, took her car keys, grabbed her hair and put a gun to her head, and ordered her to get back into her car.  An off-duty FBI agent saw the incident unfolding, approached, and asked, "What's going on?" Defendant pointed the gun at him, and the FBI agent backed away with his hands up. Defendant then pushed Mahsan into the driver's seat, got into the front passenger's seat, put the gun to Mahsan's head, and ordered her to "drive away."  When she reminded him that *he* had the car keys, he threw them at her.

Before Mahsan pulled away, the off-duty FBI agent returned, displayed his badge and his gun, and ordered defendant to "leave [Mahsan] alone." When defendant refused, the FBI agent opened fire. Mahsan testified that defendant returned fire. The People's criminologist testified that, based on analysis of damage to the car's windshield, the FBI agent shot into the car and damaged defendant's gun, and there was also one shot out of the car.

After all shots were fired, defendant ordered Mahsan to "start the car and drive away." When Mahsan offered to drive defendant to the hospital because he was bleeding, he got "more mad and angry," grabbed her by her hair, struck her in the back of her head with his gun, and repeatedly yelled at her that he was going to kill her. When defendant ordered Mahsan to turn the car from a busy street onto a quiet cul-de-sac, Mahsan jumped out of the driver's seat mid-turn and fled on foot.

Defendant then slid over to the driver's seat and led law enforcement on a high-speed chase during which he blew through stoplights and sometimes drove in excess of 100 miles per hour. Defendant abandoned the car near Malibu Bluffs Park, waved his gun at police, and fled on foot. He was apprehended a few hours later.

## II. Procedural Background

### A. *Charges*

In the operative information, the People charged defendant with 14 counts. For his harassment of Mahsan between September 8, 2013 and March 20, 2014, the People charged defendant with stalking (§ 646.9, subd. (b)). For his March 22, 2014 attack on Mahsan, the People charged defendant with (1) injuring a former spouse after suffering a conviction for the same

4

(§ 273.5, subd. (f)(2)), and (2) making criminal threats (§ 422).
For the July 30, 2014 incident, the People charged defendant
with (1) two counts of assault with a semi-automatic firearm, for
assaulting Mahsan and the FBI agent (§ 245, subd. (b)), (2) being
a felon in possession of a firearm with a prior (§ 29800, subd.
(a)(1)), (3) making criminal threats to Mahsan (§ 422), (4)
kidnapping Mahsan (§ 207, subd. (a)), (5) carjacking Mahsan
(§ 215, subd. (a)), (6) kidnapping Mahsan in the commission of a
carjacking (§ 209.5, subd. (a)), (7) injuring a former spouse after
suffering a prior conviction for the same (§ 273.5, subd. (f)(2)), (8)
two counts of attempted premeditated murder, against Mahsan
and the FBI agent (§§ 187, subd. (a), 664, subd. (a)), and (9)
evading a peace officer with willful disregard (Veh. Code,
§ 2800.2, subd. (a)).  For many of these counts, the People further
alleged that defendant personally used a firearm (§§ 12022.53,
subd. (b), 12022.5), that he personally and intentionally
discharged a firearm (§ 12022.53, subd. (c)), and that he was on
bail when he committed those counts (§ 12022.1).

B. *Verdict*

A jury found defendant guilty of all of the crimes and found
true all of the enhancements except the attempted murder of
Mahsan and the FBI agent and the enhancements for personally
and intentionally discharging a firearm.

C. *Sentencing*

The trial court sentenced defendant to state prison for life
plus 33 years and four months.  As the base time, the court
imposed a 19-year prison sentence for assaulting Mahsan with a
firearm (comprised of a base term of nine years plus 10 years for
the firearm enhancement).  Consecutive to that sentence and to
one another, the court imposed eight months (calculated as one-

third of the two-year midterm sentence) for criminally threatening Mahsan on July 30; one year for stalking Mahsan (calculated as one-third of the three-year midterm sentence); four years and four months for injuring a former spouse on July 30 (comprised of one-third of the midterm base sentence of three years and one-third of the midterm firearm enhancement of 10 years); five years and four months for assaulting the FBI agent with a firearm (comprised of one-third of the midterm sentence of six years and one-third of the midterm firearm enhancement of 10 years); eight months for being a felon in possession (comprised of one-third of the two-year midterm sentence); eight months for evading an officer (comprised of one-third of the two-year midterm sentence); one year for injuring a former spouse on March 22 (comprised of one-third of the three-year midterm sentence); eight months for criminally threatening Mahsan on March 22 (comprised of one-third of the two-year midterm sentence); and life plus 12 years for kidnapping in the commission of carjacking, comprised of a life sentence plus 10 years for the firearm enhancement plus two years for being out on bail at the time of the offense.[2]

**D.    *Appeal***

Defendant filed this timely appeal.

**E.    *Petition for a writ of habeas corpus***

Defendant also filed a petition for a writ of habeas corpus. We subsequently issued an order by which we would consider the petition concurrently with defendant's appeal.

---

[2]    The trial court dismissed the kidnapping and carjacking counts because they are lesser included offenses to the crime of kidnapping in the commission of a carjacking.

6

# DISCUSSION
## Direct Appeal
## I. Limitation on Cross-Examination of Mahsan

The trial court allowed defendant to cross-examine Mahsan regarding the reasons she married defendant (that is, to help him get out of jail and to prevent him from being deported), that they dated but maintained separate residences after the marriage ceremony, and that she "wasn't even sure if this marriage [was] right or wrong." However, the court did *not* allow defendant to elicit that "it's a federal offense to enter into a marriage for false pretenses for immigration purposes." In its ruling, the court assumed for purposes of argument that Mahsan's conduct evinced moral turpitude, but concluded that "the fact [her conduct] would [have been] violative of federal law [was] of such slight probative value that it [was] outweighed by [the] undue consumption of time[, a]nd, more importantly, will confuse the jury." Defendant contests this ruling. Our review is solely for an abuse of discretion. (*People v. Ayala* (2000) 23 Cal.4th 225, 273 [trial courts enjoy "broad discretion" in deciding whether to admit prior conduct to impeach].)

The court grounded its ruling in Evidence Code section 352. That provision empowers a trial court to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) Where, as here, a party seeks to admit misconduct falling short of a conviction, a trial court weighing the statutory considerations under Evidence Code section 352 should consider (1) "whether [the conduct] reflects on the witness's honesty or veracity," (2)

7

"whether [the conduct] is near or remote in time," (3) "whether [the conduct] is for the same or similar conduct as the charged offense," (4) that "a misdemeanor—or any other conduct not amounting to a felony—is a less forceful indicator of immoral character or dishonesty than is a felony," and (5) that impeachment evidence other than felony convictions "generally is less probative of immoral character or dishonesty" than conduct that resulted in a conviction, and "may involve problems involving proof, unfair surprise, and the evaluation of moral turpitude." (*People v. Clark* (2011) 52 Cal.4th 856, 931-933, citing *People v. Beagle* (1972) 6 Cal.3d 441, 453; *People v. Wheeler* (1992) 4 Cal.4th 284, 296-297.)

The trial court did not abuse its discretion. First, the probative value of the prohibited testimony was minimal. The court admitted evidence regarding Mahsan's allegedly dishonest conduct—namely, that she agreed to marry defendant in order to help him get out of prison and avoid deportation. However, whether that conduct might qualify as a federal crime adds almost no impeachment value, and thus has very little probative value. (*People v. Lepolo* (1997) 55 Cal.App.4th 85, 89-90 [the precise crime a witness committed by her misconduct "is meaningless, since there will never be a conviction for any particular offense arising from the conduct"].) This is especially true here, where Mahsan explained that she agreed to this "plan" under duress due to the constant pressure applied by defendant and his family. Even if the duress she ultimately succumbed to would not constitute a complete defense to any federal crime, Mahsan's willingness to lie to help defendant when pressured by his family says almost nothing about whether she would be willing to lie to hurt defendant when no pressure is present.

8

Further, inquiry into which federal offense might encompass Mahsan's conduct (and, relatedly, whether it was excused by the duress she experienced) was likely to confuse the jury by diverting attention to such a collateral issue. What is more, defendant also sought to elicit what Mahsan said to assist defendant at his immigration hearing. But this additional testimony not only had minimal probative value for the reasons stated above, but would take up additional time. Consequently, the trial court did not abuse its discretion in concluding that the minimal probative value of this evidence was substantially outweighed by countervailing considerations.

Defendant asserts that his constitutional rights to confrontation, to present a defense and to due process override Evidence Code section 352, but they do not in this case given the minimal probative value of the information he sought to elicit. (*People v. Brown* (2003) 31 Cal.4th 518, 545-546; cf. *People v. Reeder* (1978) 82 Cal.App.3d 543, 553 [where evidence has "significant probative value" and should not be excluded under Evidence Code section 352, its exclusion can violate a defendant's constitutional rights"], italics omitted.)

## II. Substantial Evidence Underlying the Kidnapping for Carjacking Count

Defendant argues that substantial evidence does not support his conviction for kidnapping for the purposes of carjacking. In assessing this claim, we "resolve[ all] conflicting inferences" in favor of the verdict and ask only whether there is "substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Casares* (2016) 62 Cal.4th 808, 823, overruled in part

9

on other grounds as stated in *People v. Dalton* (2019) 7 Cal.5th 166, 214.)

Section 209.5 makes it a crime to "kidnap[] another person" "during the commission of a carjacking and in order to facilitate the commission of the carjacking." (§ 209.5, subd. (a); accord, CALCRIM 1204.) Although the crime requires proof that the defendant commit the kidnapping "with the intent to facilitate the carjacking" (CALCRIM 1204), that intent need not be "the sole, or [even] primary, intent" (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1366 (*Ortiz*)). Thus, a defendant commits the crime of kidnapping for carjacking if he kidnaps a person and, with her in the car, drives away—even if his *primary* intent for this conduct was to kidnap the person in order to hold her for ransom. (*Id.* at pp. 1365-1366.)

Substantial evidence supports the jury's finding that defendant kidnapped Mahsan with the intent to facilitate the carjacking. Defendant chose to approach Mahsan when she was just a "few feet" from her car in a parking lot. He also wore clothing that masked his identity from afar, ostensibly so he could get close to Mahsan. Upon accosting her, defendant immediately took her car keys, put a gun to her head and told her to get into the car. After being approached by the FBI agent the first time, defendant pushed Mahsan into the driver's seat and got into the passenger's seat. Once there was a pause in the firefight with the FBI agent, defendant with a gun to Mahsan's head instructed her to drive away. And once Mahsan escaped from the car, defendant slid into the driver's seat and proceeded to use the car to lead law enforcement on a dangerous high-speed chase.

10

Defendant's chief argument on appeal is that his "entire history of stalking and physically assaulting" Mahsan shows that he carjacked "for [the] purpose[] of kidnapping" her rather than kidnapped her "for [the] purpose[] of carjacking." This argument lacks merit for two reasons. First, it rests on the incorrect premise that a defendant commits the crime of kidnapping for the purpose of carjacking only if his intent to carjack is his *primary* intent. But it is enough if it is *one* of the intents with which he acted. (*Ortiz, supra*, 208 Cal.App.4th at p. 1366.) Here, there is sufficient evidence that defendant acted with two intents concurrently—namely, to kidnap for the purpose of carjacking *and* to carjack for the purpose of kidnapping. Second, defendant's argument impermissibly blurs the line between motive and intent. Motive is "the reason a person chooses to commit a crime," and "is different from a required mental state such as intent." (*People v. Hillhouse* (2002) 27 Cal.4th 469, 504.) Thus, while defendant's primary motive for his crimes might have been to kidnap, threaten and kill Mahsan, that is not dispositive of his intent while committing his crimes.

## Petition for Writ of Habeas Corpus

In a separately filed petition for a writ of habeas corpus, defendant argues (1) that he was forced to begin trial in less than the minimum time provided by statute in violation of his right to due process (*In re Newbern* (1960) 53 Cal.2d 786, 790-792), and (2) the trial court committed sentencing errors when it incorrectly calculated (a) the sentences for the firearm enhancements, and (b) presentence custody credits.

First, defendant contends that he was "never notified" of the date his trial would start and asserts that he was notified "for the first time" that he "was to start picking [his jury]" when he

11

arrived in court on August 26, 2019.  The record forecloses the factual premise of his argument.  By statue, defendant had five days after the date of his arraignment to prepare for trial. (§ 1049.)  Because defendant was arraigned and pled not guilty on July 14, 2016, defendant's trial could begin any time on or after July 21, 2016.  Some 32 months later, on March 22, 2019, the trial court advised defendant that his trial would begin on August 19, 2019, or within 10 days thereafter.  Defendant's trial commenced on August 26, 2019.  Because defendant had ample notice of the trial date, and because that trial date complied with the pertinent statute, we reject his due process argument.[3]

Second, defendant asserts the trial court erred in sentencing him to "34 years of enhancement" because it imposed the "maximum time where it was to sentence [him] to [one-third] of the low term or the [midterm]" and because the two section 12022.5 firearm enhancements run afoul of section 654.  These arguments are also belied by the record, which shows that (1) the trial court correctly imposed a full-term firearm enhancement only for the principal count of conviction and imposed one-third of the term for the firearm enhancements attached to all subordinate counts, and (2) the two section 12202.5 enhancements were imposed for crimes against separate victims (*People v. Vega* (2013) 214 Cal.App.4th 286, 296-297 [noting this is appropriate under section 654]).  (See Facts and Procedural Background, section II.C., *ante*.)

---

[3]     Although defendant represented himself during a brief window of time between July 13, 2017 and December 12, 2017, he was represented by counsel at all of the pertinent hearings set forth in the text.

12

Lastly, defendant argues that he is entitled to one day of conduct credit for each day of actual custody credit. He is wrong. Conduct credits are limited to 15 percent of the actual period of confinement for persons convicted of a "violent felony" as defined in section 667.5, subdivision (c). (§ 2933.1, subd. (c); *People v. Valenti* (2016) 243 Cal.App.4th 1140, 1184, superseded by statute on other grounds as stated in *People v. Brooks* (2018) 23 Cal.App.5th 932, 946.) Because defendant's convictions for assault with a firearm and kidnapping in the commission of a carjacking constitute violent felonies, the trial court correctly awarded defendant 282 days of conduct credit, which corresponds to 15 percent of the 1,882 days of actual custody credit.

## DISPOSITION

The judgment is affirmed and the petition for writ of habeas corpus is denied.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ

13