[Crim. No. 12136. Fourth Dist., Div. Two. Sept. 16, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN JOSEPH McCARTHY, Defendant and Appellant.

## COUNSEL

Suzan E. Boatman, under appointment[1] by the Court of Appeal, and Philip R. Clarkson for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Richard D. Garske and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GARDNER, P. J.**—Defendant was found guilty by a jury of two counts of violation of Penal Code section 288, one of rape and one of violation

---

[1]We pause to offer belated recognition to a dedicated, unsung, unrecognized and grievously underpaid group of men and women—attorneys appointed to represent indigent criminal defendants in the Courts of Appeal.

For reasons not here relevant the State Public Defender has never been able to handle the full caseload of indigent criminal appeals. The balance are handled by a group of volunteer lawyers up and down the state who perform services for fees which rest uncomfortably between being woefully inadequate and pitifully insufficient—true coolie wages and mighty meager ones at that. The reason for this unfortunate situation is section 1241 of the Penal Code.

In the trial court when an attorney is appointed to represent an indigent criminal defendant, he receives a reasonable fee regardless of its amount (Pen. Code, § 987.2 et seq.). Penal Code section 1241 also provides that counsel on appeal be paid a reasonable fee. Then comes the joker. The section then provides that this amount shall be "paid from any funds appropriated to the Judicial Council for that purpose." The Legislature and the Governors have been downright niggardly in these appropriations. The result is that each year these appointed lawyers afford representation to indigent appealing defendants for fees which hardly cover office overhead.

The briefing in this case has been outstanding and for their services, counsel will receive a fee which could only be classified as pitiful. They will also receive a silent apology from the Presiding Justice for this inequitable situation.

of Penal Code section 288a. A jury found him to have been sane at the time of the offense. The court found that he was not an mentally disordered sex offender (MDSO) and sentenced him to prison.

Defendant raped 12-year-old Kathleen 4 times, orally copulated her and had her orally copulate him. No attack is made as to the sufficiency of the evidence as to the guilt phase.

On the sanity phase the evidence was clear that the defendant was an alcoholic. One doctor testified that defendant was insane but nevertheless concluded that the defendant was not suffering from a chronic brain syndrome. Another psychiatrist testified that the defendant was insane and that he was suffering from organic brain syndrome due to chronic alcoholic intoxication with psychotic reaction. A third doctor testified that the defendant was insane due to organic brain syndrome due to chronic alcoholism. A prosecution psychiatrist testified that he found no evidence of chronic organic brain syndrome and further indicated that chronic brain syndrome was always irreversible. His opinion was that at the time of the crime defendant was merely under the immediate effects of alcohol rather than any organic brain damage.

This doctor declined to answer any "legal questions" regarding insanity and would answer only "medical questions." ▬ From this, the defendant leaps to the conclusion that the only evidence before the jury as to sanity was that of the defense doctors. We do not agree. Actually, it appears to us that the better approach is that taken by the prosecution doctor, i.e., to testify to medical matters then allow the jury, under proper instructions, to reach the legal conclusions.

▬ Under *People* v. *Kelly* (1973) 10 Cal.3d 565 [111 Cal.Rptr. 171, 516 P.2d 875], when an effort is made to establish insanity due to alcohol, it must be shown that there exists a "settled insanity" and not the type of a temporary mental condition produced by current use of alcohol. In other words, your friendly local lush cannot get sloshed, commit a horrendous crime and slip into a state hospital free from criminal sanctions. If an alcoholic wants to use his problem as an escape hatch, he must drink enough to develop a mental disorder that continues when he is stone sober even though the damage is not permanent in the sense it is beyond repair. *Kelly* offers us the only escape from a completely absurd situation in which those who produce distorted mental conditions by the use of such mind-benders as acid, speed, angel dust or alcohol, then commit bizarre, dangerous and ugly acts could escape

criminal sanctions on the basis that their self-induced mental conditions produced an incapacity to appreciate the criminality of their conduct. *People* v. *Drew* (1978) 22 Cal.3d 333 [149 Cal.Rptr. 275, 583 P.2d 1318] never intended any such outrageous conduct.

From this record, the defendant contends that the finding of sanity lacks substantiality. ■ *People* v. *Drew, supra*, 22 Cal.3d 333, put the issue in this language. " . . . the question on appeal is not so much the substantiality of the evidence favoring the jury's finding as whether the evidence contrary to that finding is of such weight and character that the jury could not reasonably reject it." (At p. 351.)

Since the defendant has the burden of proof (*People* v. *Drew, supra*, at pp. 348-349) to establish by a preponderance of the evidence that he is insane, the above *Drew* language is just another way of saying that before we can overturn a jury's finding to the contrary, we must find as a matter of law that the jury could not reasonably reject the evidence of insanity. ■ We find that substantial evidence supports the jury's finding as to sanity and we cannot find as a matter of law that the defendant is insane.

Defendant contends that the current California system of separate trials for guilt and sanity denies him due process. However, while the Supreme Court in *People* v. *Wetmore* (1978) 22 Cal.3d 318 [149 Cal. Rptr. 265, 583 P.2d 1308] noted problems with the system, it also noted that this was a question for the Legislature and not for the courts to decide. (*People* v. *Wetmore, supra*, at pp. 330-332.) It is true that the potential evidentiary overlap of diminished capacity and the American Law Institute (ALI) test may indicate that the time has come for the abandonment of the bifurcated trial. However, as *Wetmore* said, this is a matter for the Legislature.

As to the MDSO proceedings, the defendant presents an issue, the answer to which appears clear to us. However, we have noted that, particularly since the new legislative scheme makes MDSO commitments more attractive than they were when they were potential life sentences, there has been a recurring contention made that the standard of proof in the initial MDSO proceeding be by a preponderance of the evidence rather than beyond a reasonable doubt. The Attorney General advises us that this contention has been raised in various counties around the state and has requested that this court publish its opinion in this case dealing with this issue.

As indicated, after the finding of guilt and the finding of sanity, the court instituted MDSO proceedings. Over-simplified, MDSO proceedings call for an initial nonjury determination as to whether the defendant is an MDSO. If it is found that he is not, that ends the inquiry. ■ If he is found to be an MDSO then he is entitled to demand a jury trial on that issue. (Welf. & Inst. Code, §§ 6316, 6318.) Clearly, under *People v. Burnick* (1975) 14 Cal.3d 306 [121 Cal.Rptr. 488, 535 P.2d 352]; *People v. Feagley* (1975) 14 Cal.3d 338 [121 Cal. Rptr. 509, 535 P.2d 373]; *People v. Bonneville* (1975) 14 Cal.3d 384 [121 Cal.Rptr. 540, 535 P.2d 404]; and Welfare and Institutions Code section 6318, the standard of proof as to the latter hearing is beyond a reasonable doubt.

The defendant contends that as to the preliminary hearing, since he is the one who wants to go the MDSO route, the burden of proof should simply be by a preponderance of the evidence. However, this is not the practice in this state (see L.A. Super. Ct. Criminal Trial Judges' Benchbook, pp. 491-494), and in this case the court applied the reasonable doubt standard. We agree.

There should not be two standards, one for the initial hearing and another for the second, or one for cases where defendant wishes to be found an MDSO and another where he feels just the opposite. The issue is the same—prospective deprivation of liberty. The fact that the defendant may want this deprivation of liberty when he compares it to a prospective prison sentence does not change the basic policy. The court has an obligation to both the defendant and to the judicial system to see to it that no one is committed as an MDSO with its stigma and corresponding loss of liberty unless the standard established in *Burnick* and *Feagley* is followed.

■ Witkin has no problem with this issue. He says that on MDSO proceedings the "constitutionally required standard of proof is 'beyond a reasonable doubt' rather than a preponderance of the evidence, *at any stage of the proceedings*." (Witkin, Cal. Criminal Procedure (1978 supp.) p. 896, italics added.) Witkin uses as his authority *Burnick, supra*, 14 Cal.3d at page 332, which says that standard of proof ". . . manifestly *applies to any stage of the proceedings* in which the person is committed or recommitted to the State Department of Health pursuant to a finding that he is a mentally disordered sex offender (e.g., §§ 6316, 6326, 6327)." (Italics added.)

Defendant also contends that once the court made the determination he was not an MDSO then he was entitled to a jury trial on that issue. The code makes no such provision and we can think of no constitutional basis for a change in the legislative plan. Contrary to his contention, we see no equal protection violation here. Nor can we agree with defendant's contention that his alternative to such a jury trial is the deprivation of his liberty via a prison sentence. This argument incorrectly assumes prison sentences are mandatory for one found not to be an MDSO and omits recognition of the constitutional safeguards involved in the guilt trial process. Perhaps the initial hearing could be omitted and all cases proceed directly to the jury trial when the matter is initially presented. However, again, that is a matter for legislative action, not the rewriting of a statutory scheme under some strained constitutional rationale.

Judgment affirmed.

Tamura, J., and McDaniel, J., concurred.

A petition for a rehearing was denied October 6, 1980, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied December 17, 1980.